## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**[Filed Electronically]**

| | |
|---|---|
| **TONI L. WALLACE, Administratrix of the** ) <br> **Estate of her son, XAVIER ALEXIS BRYANT,** ) <br> **deceased,** ) <br> ) <br> **PLAINTIFF** ) <br> **v.** ) <br> ) <br> **CHRISTIAN COUNTY, KENTUCKY** ) <br> Serve:  Jerry Gilliam ) <br> County Judge-Executive ) <br> 216 W. 7th Street, Suite A ) <br> Hopkinsville, KY  42240 ) <br> **-and-** ) <br> ) <br> **ADAM SMITH, individually** ) <br> Serve: Office of the Jailer ) <br> Christian County Jail ) <br> 410 West 7th Street ) <br> Hopkinsville, KY  42240 ) <br> **-and-** ) <br> ) <br> **JOSEPH M. BRANNON, KYLE A. MILLER,** ) <br> **KIP C. DARNELL, JESY A. INMAN,** ) <br> **MATTHEW W. NEWBY, WESLEY C.** ) <br> **CAMPBELL, all individually** ) <br> Serve: Christian County Jail ) <br> 410 West 7th Street ) <br> Hopkinsville, KY  42240 ) <br> **-and-** ) <br> ) <br> **THE MEDICAL SECRETARY OF THE** ) <br> **CHRISTIAN COUNTY JAIL DURING THE** ) <br> **EVENTS MADE THE SUBJECT OF THIS** ) <br> **COMPLAINT, individually** ) <br> Serve: Christian County Jail ) <br> 410 West 7th Street ) <br> Hopkinsville, KY  42240 ) <br> **-and-** ) | Case No. 5:24-CV-7-BJB |


| | |
|---|---|
| **ALL PERSONS WHOSE INITIALS AND/OR BADGE NUMBERS APPEAR ON THE OBSERVATION RECORD ATTACHED AS EXHIBIT 1, all individually**<br>**Serve:** Christian County Jail<br>      410 West 7th Street<br>      Hopkinsville, KY  42240<br><br>                **DEFENDANTS.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# **COMPLAINT**

## I. Introduction

1. Plaintiff Toni Wallace, Administratrix of the Estate of her son, Xavier A. Bryant, deceased, complains of the misconduct of Defendants named in the caption above. As more specifically set forth below, Mr. Bryant, upon his admission to and after his incarceration at the Christian County Jail ("the Jail") and while a pretrial detainee, exhibited the signs and symptoms of an obviously serious medical need to which Defendants responded in a manner that was objectively unreasonable, deliberately indifferent, intentional, malicious, negligent, and grossly negligent. As a consequence, Mr. Bryant experienced severe mental and physical pain and suffering and then died. It is the purpose of this action to recover the actual damages Mr. Bryant's estate sustained because of Defendants' misconduct, and punitive damages to punish Defendants' conduct and deter its repetition.

## II. Jurisdiction and Venue

2. Plaintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed Mr. Bryant by the Fourteenth Amendment to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§1331 and 1343. Plaintiff also seeks damages for Defendants' negligence and gross negligence, and for

Mr. Bryant's wrongful death. Christian County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

### III.  Parties

3. Plaintiff is a resident of Jefferson County who was appointed administratrix of Mr. Bryant's Estate by the Christian County District Court on May 1, 2023.

4. Defendant Christian County, at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the training, supervision and conduct of, Jailer Adam Smith and the County officers and employees responsible for inmates in the Jail. Christian County was also statutorily responsible for the care and custody of inmates in its Jail pursuant to KRS Chapter 441, *et. seq.*

5. Defendant Adam Smith was at all times mentioned herein acting individually and/or in his official capacity as Jailer of Christian County, and as such established policies either formally or by custom for, and was responsible for the training, supervision and conduct of, the County officers and employees responsible for inmates in the Jail. Smith was also statutorily responsible for the care and custody of inmates in the Jail, and for the Jail's compliance with KRS 441.045(3) and for providing "necessary care" as defined by KRS 441.045(10).

6. Defendants Brannon, Miller, Darnell, Inman, Newby, Campbell, the Jail's Medical Secretary during the events made the subject of this Complaint, and all persons whose initials and/or badge numbers appear on the observation record attached as Exhibit 1, were at all times mentioned herein deputy jailers in the Jail, were directly responsible for attending to the medical needs of inmates in the Jail, and personally and directly participated in the mistreatment of Mr. Bryant described below.

### IV. Nature of Defendants' Conduct

7. Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky and Christian County. Defendants knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below. The offenses described below resulted from the failure of the County and Jailer Adams to properly or conscientiously train and supervise the conduct of their employees and persons under their supervision, and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect the constitutional rights of inmates like Mr. Bryant. Defendants' conduct was objectively unreasonable, intentional and grossly negligent, indicated active malice toward Mr. Bryant and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages his Estate is entitled to recover.

### V. Facts

8. On August 10, 2022, at 8:37 am, Mr. Bryant, who was then 36 years old, was arrested by officers of the Hopkinsville Police Department for public intoxication. At the time of his arrest, Mr. Bryant was wandering around downtown Hopkinsville wearing only a pair of shorts and one sock. His arrest citation indicates that his speech was slurred, that he was swaying and stumbling while standing up, that he could not provide the officers with his birth date or his social security number, that he aggressively refused a passerby's offer to drive him home, and that he was a danger to himself.

9. Mr. Bryant was transported to the Jail. On information and belief, the Jail's written policies and procedures deemed drug and alcohol withdrawal to be a medical emergency and

prohibited the admission of persons exhibiting the signs and symptoms of an emergency medical condition. However, in violation of such policies and procedures, Mr. Bryant was admitted to the Jail by Defendants Campbell and Newby a little before 9 am on August 10 even though he was incapable of participating in standard booking procedures (which typically require the completion of a standard medical questionnaire including questions about substance abuse and withdrawal history) and without being assessed or examined by a medical professional.

10. Mr. Bryant was placed in Detox Cell 232, indicating Defendants' expectation that he would "detox" – or withdraw – from alcohol and/or drugs.

11. During his incarceration in Detox Cell 232, Mr. Bryant was checked at the times specified and by the persons identified by their initial and badge numbers in the attached Exhibit 1. Although such persons observed the signs and symptoms of Mr. Bryant's obviously serious medical needs, none of their "Remarks" on Exhibit 1 indicate anything more than Mr. Bryant's physical position at the time he was checked. However, a surveillance camera in Detox Cell 232, the footage of which was summarized by the Kentucky State Police ("KSP") in the narrative attached as Exhibit 2, reflects that, among other things, Mr. Bryant was observed:

- Handling, rummaging through, moving, and taking parts of his sleeping cellmate's property;

- Standing in the middle of the room holding his penis over the empty food trays;

- Bent over, appearing to pick things up off the floor that are not there "as if he is hallucinating";

- Crawling around the cell;

- Walking around the cell appearing to be looking for things that are not there;[1]

- Attempting to rummage through the property of his cellmate after he awakened;

---

[1] The cellmate subsequently told the KSP investigator that Mr. Bryant had said he was looking for his liquor bottle.

5

- Grabbing paper off the floor and rolling and licking it;

- Resting his head on a meal tray;

- Drinking from the toilet; and

- Putting rolled-up paper to lips as if he was smoking a cigarette.

As a consequence of the above, several physical altercations between Mr. Bryant and his cellmate ensued.

12. A little after noon on August 10, Plaintiff, who had learned of her son's incarceration, called the Jail and spoke to an individual identified to her as the Jail's "Medical Secretary." Plaintiff told the Jail's Medical Secretary that Mr. Bryant was a heavy drinker, was having a mental crisis, and might go through alcohol withdrawal, and she asked that the Jail keep an eye on him. After remembering that she had forgotten to tell the Jail's Medical Secretary that Mr. Bryant had recently been hospitalized for seizure-related activity, she called the Jail back and spoke to a female to whom she provided this information, and who assured Plaintiff that such information would be passed on to the Jail's Medical Secretary.

13. At 3:07 pm, Mr. Bryant was removed by Defendant Newby from Detox Cell 232 and placed in Detox Cell 210. Mr. Bryant's placement in Detox Cell 210 indicated Defendants' expectation that he was still "detoxing" – or withdrawing – from alcohol and/or drugs. During his incarceration in Detox Cell 210, Mr. Bryant was checked at the times specified and by the persons identified by their initial and badge numbers in the attached Exhibit 1. Although such persons observed the signs and symptoms of Mr. Bryant's obviously serious medical needs, none of their "Remarks" on Exhibit 1 indicate anything more than Mr. Bryant's physical position at the time he was checked. However, a surveillance camera in Detox Cell 210, the footage of which was also

summarized by the Kentucky State Police in the narrative attached as Exhibit 2, reflects that, among other things, Mr. Bryant was observed naked and acting as if he was rolling a cigarette.

14. At 3:52 pm, Mr. Bryant was moved back to Detox Cell 232, which his former cellmate had vacated. Mr. Bryant's return to Detox Cell 232 indicated Defendants' expectation that he was still "detoxing" – or withdrawing – from alcohol and/or drugs. During his remaining time in Detox Cell 232, Mr. Bryant was checked at the times specified and by the persons identified by their initial and badge numbers in the attached Exhibit 1. Although such persons observed the signs and symptoms of Mr. Bryant's obviously serious medical needs, none of their "Remarks" on Exhibit 1 indicate anything more than Mr. Bryant's physical position at the time he was checked. However, the KSP summary attached as Exhibit 1 states:

> For the next eleven hours, Bryant is in the cell alone and continues showing odd behavior. Bryant is naked for the remainder of his time in the cell. Bryant continues to move around the room stumbling at times, pointing and waving to empty cell, looking at the floor searching for things that are not in the room, and being observed to be hallucinating. Bryant was observed multiple times stumbles (sic) while walking around the cell and fell over multiple times. Bryant only sits or lays down for short periods and continues to move around the cell. At no point does Bryant appear to sleep or rest.

15. Mr. Bryant's continued agitation indicated he was not "sobering up" or "sleeping it off." Instead, his delusional/hallucinatory behavior demonstrated that he was in the throes of *delirium tremens* or "DTs," an obviously emergent state of alcohol withdrawal that shows that the subject's withdrawal has progressed to a life-threatening state. Despite these scenes, which even a layperson would have recognized as requiring some medical attention, Mr. Bryant was never seen by a medical professional who could determine the severity of his condition or institute the appropriate treatment.

16. The four entries of the KSP summary that precede Mr. Bryant's death state:

0315: Bryant stands up stumbles/walks a circle around the cell looking at the floor. Bryant falls to the ground slumped over near the wall in front of the cell door.

0316: Bryant sits against the wall in front of the cell door with his legs straight out. I observed Bryant's legs start to shake and twitch.

0317:47: Bryant's whole body starts to shake. His arms and legs continue to move in a twitching manner.

0320: Bryant stops moving.

17. For four minutes, Mr. Bryant was twitching and shaking without any emergent response. Defendants Brannon, Miller, Darnell, and Inman, who had been aware for some time that Mr. Bryant was detoxing and behaving erratically, did not enter Mr. Bryant's cell to begin resuscitative measures until 3:32 am. Mr. Bryant could not be revived and was pronounced dead around 4:23 am.

18. The coroner assigned the cause of death as "complications from chronic alcohol abuse (cannot exclude alcohol withdrawal syndrome). .... The details of the events surrounding the death are consistent with alcohol withdrawal syndrome, supported by the lack of ethanol or benzodiazepines in the blood at the time of death."

19. Mr. Bryant was never seen by a medical professional qualified to diagnose and treat his obviously serious medical needs while in the Jail and prior to his death.

20. Given the prevalence of drug and alcohol abuse among inmates in Kentucky county jails, Defendants Christian County and its Jailer knew or should have known that the Jail's officers and employees must be trained, supervised, and provided appropriate guidance through written policies and procedures to recognize and properly respond to the signs and symptoms of alcohol withdrawal and DTs to prevent injury, death, and a violation of the constitutional and common law rights of inmates entrusted to their care. The facts of this case demonstrate they were not.

21. Even in the absence of such training and supervision, the individual Defendants, as would any layperson, knew or should have known that Mr. Bryant was exhibiting signs and symptoms of a serious medical condition requiring medical attention and treatment that he was not being provided -- and perhaps could not be provided -- at the Jail. Despite such knowledge, they failed to obtain for him the requisite medical attention and treatment sufficiently in advance of his death to save his life.

## VI.  Causes of Action

### Count I

22. By virtue of the foregoing, Defendants failed and refused to attend to Mr. Bryant's obviously serious and life-threatening medical needs.

23. Defendants' conduct was intentional, reckless, deliberate, wanton, malicious and/or objectively unreasonable, and was indicative of their total, deliberate, reckless and/or unreasonable disregard of and indifference to Mr. Bryant's life as well as his rights and the risk of harm to him occasioned by such conduct.

24. Plaintiff believes and, after reasonable discovery, will show that Bryant's treatment by Defendants was the result of policies, customs and practices of Christian County written or unwritten, and that such policies, customs and practices were the "moving force" behind Mr. Bryant's suffering and death. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Mr. Bryant, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

25. Mr. Bryant's death was also the direct consequence of the failure of Defendants Christian County and Smith to train their employees and subordinates on policies and procedures intended to save the lives of inmates like Mr. Bryant, and to provide sufficient supervision to insure that such policies are followed and enforced.

26. As a result of the foregoing, Mr. Bryant, through Defendants' objectively unreasonable, deliberately indifferent and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment and denied due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. §1983.

## Count II

27. By virtue of the foregoing, the individual Defendants named above were negligent and grossly negligent.

## Count III

28. By virtue of the foregoing, Dylan's estate is entitled to recover for his wrongful death pursuant to KRS 411.130.

## VII. Damages

29. Mr. Bryant's suffering and death were preventable, and his estate is therefore entitled to recover for the wanton and unnecessary physical and mental pain and suffering he endured, the loss of his power to labor and earn money, and his death. Also, Defendants' violations of Mr. Bryant's constitutional and common law rights were cruel, malicious, and evinced a total and reckless disregard for his life and those rights, entitling Plaintiff to recover punitive damages from Defendants in order to deter such conduct in the future.

**WHEREFORE**, Plaintiff requests a trial by jury, and further requests that she be awarded actual and punitive damages, pre- and post-judgment interest, costs, attorneys' fees pursuant to 42 U.S.C. §1988, and all other relief to which he is entitled under law or in equity.

Respectfully submitted,

/s/ Gregory A. Belzley
Gregory A. Belzley
gbelzley3b@gmail.com
P.O. Box 278
Prospect, KY  40059
502/292-2452

Andrew C. Weeks
Legal Justice at Work, PLLC
609 W. Main St., Ste. 301
Louisville, KY 40202
Phone: (502) 408-6173
Fax: (502) 586-7176
acweeks@legaljusticeatwork.com

*Counsel for Plaintiff*